IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2005

## STATE OF TENNESSEE v. NORMAN KYLE LEWIS

**Appeal from the Criminal Court for Washington County**
**No. 28841     Robert E. Cupp, Judge**

---

**No. E2005-00766-CCA-R3-CD - Filed January 27, 2006**

---

The Appellant, Norman Kyle Lewis, was convicted by a Washington County jury of attempted first degree murder and was sentenced as a Range I standard offender to twenty-five years in the Department of Correction. On appeal, Lewis argues that the evidence is insufficient to support his conviction. After review of the record, we conclude that the convicting evidence was legally sufficient. Accordingly, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

James T. Bowman, Johnson City, Tennessee, for the Appellant, Norman Kyle Lewis.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Joe Crumley, District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On the evening of March 30, 2003, the Appellant visited Wayne Birchfield, the victim, at his residence in Washington County. The two had known each other for thirty years, and the sixty-nine-year-old victim considered the Appellant his best friend. The Appellant was a frequent visitor of the victim, and only ten days prior to this occasion had obtained a $500 loan from the victim, which remained unpaid. On this occasion, the Appellant discussed his marital and financial problems while the two watched television and drank beer at the kitchen table. After several hours of socializing and beer drinking, the Appellant walked to the refrigerator and looked inside for more beer. The victim informed the Appellant that he had drunk all the beer, and the Appellant announced that he was leaving. As the victim remained seated at the table, he felt the Appellant's hand on his neck, and after seeing blood gushing from his neck, he realized that his throat had been cut. Immediately, the

victim jumped from the table and grabbed a chair to shield himself from any further assault by the Appellant. The panic-stricken victim ran across the street to his neighbor's home, and the Appellant drove away.

At trial, the Appellant testified that his assault on the victim was an act of self-defense. He explained that following an argument between the two men, the victim had pointed a gun at his head and pulled the trigger with the gun misfiring.[1] The Appellant related that at this point he flipped open a knife on his key chain and "I guess I cut him." He further stated that the blade was about one inch long and that he did not know what happened to the knife.

The victim's neighbor, Tommy Bailey, testified that he was awakened around 11:00 p.m. on March 30, 2003, by someone yelling and beating on his front door. He heard "someone just screaming out, Tommy, it's Wayne, let me in. I need you to call 911, somebody's cut my throat." Bailey opened the door and saw the victim holding his blood-soaked shirt around his neck.

Chris Bevins, an investigator with the Washington County Sheriff's Department, responded to the scene around 10:50 p.m.. In addition to splattering of blood inside the house, Bevins observed a trail of blood leading from the victim's home across the roadway. Moreover, the crime scene did not indicate that a struggle had occurred prior to the assault. A search of the victim's residence and yard for a knife or cutting instrument proved unsuccessful.

At the conclusion of the trial, the trial court instructed the jury on the indicted offense of attempted first degree murder and the applicable lesser-included offenses. In addition, the jury was instructed with regard to the law of self-defense. Following deliberations, the jury found the Appellant guilty of attempted first degree premeditated murder as charged. This appeal followed.

**Analysis**

On appeal, the Appellant asserts that the evidence is insufficient to support his conviction for attempted first degree murder. Specifically, he contends that the State failed to prove the element of premeditation. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

---

[1]During the victim's direct examination, he denied that on this occasion that he ever displayed a weapon to the Appellant.

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First degree murder is defined as "a premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1) (2003). The statute defines premeditation as follows:

> As used in subsection (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d); *State v. Sims*, 45 S.W.3d 1, 7-8 (Tenn. 2001).

The element of premeditation is a question of fact to be resolved by the jury and may be established by proof of the circumstances surrounding the killing. *State v. Suttles*, 30 S.W.3d 252, 260 (Tenn.), *cert. denied,* 531 U.S. 967, 121 S. Ct. 401 (2000). Because the trier of fact cannot speculate as to what was in the defendant's mind, the existence of facts of premeditation must be determined from the defendant's conduct in light of the surrounding circumstances. Although there is no strict standard governing what constitutes proof of premeditation, our supreme court has held that premeditation may be inferred from a defendant's use of a deadly weapon upon an unarmed victim; the cruelty of the killing; declarations by a defendant of an intent to kill; the defendant's procurement of a weapon; a defendant's preparations prior to a killing for concealment of the crime; and calmness immediately after the killing. *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998); *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997), *cert. denied*, 523 U.S. 1083, 118 S. Ct. 1536 (1998).

The Appellant's insufficiency argument in this case focuses upon the lack of proof of any premeditation. First, we would observe that, although rejected by the jury, the Appellant's defense at trial of self-defense concedes his intentional use of force by means of a knife upon the victim. *See* T.C.A. § 39-11-611 (2003). Thus, the question for the jury was whether the intent to kill was formed prior to the Appellant's act of cutting the victim's throat. Applying the above established factors to the proof most favorable to the State, we conclude that premeditation could rationally be inferred based upon the facts that (1) the victim was unarmed, (2) the Appellant's weapon was never located, (3) the Appellant lunged at the victim from behind and slashed the victim's throat from ear to ear,

and (4) the Appellant remained calm following the assault. Accordingly, we conclude that the evidence is legally sufficient to support the jury's verdict of guilt for attempted first degree murder.

## CONCLUSION

Based on the foregoing, we affirm the Appellant's judgment of conviction for attempted first degree murder.

_____
DAVID G. HAYES, JUDGE